IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:26-CV-00393-KDB-DCK

| | |
|---|---|
| **ANDREW WILSON DIXON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**JACKSON BUFFINGTON AND JOSEPH MARESCO,**<br><br>**Defendants.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendants' Motions to Dismiss (Doc. No. 10), to Strike the Amended Complaint (Doc. No. 17), and for Sanctions (Doc. No. 19). The Court has carefully considered the motions, and the parties' briefs and exhibits in support and opposition. For the reasons discussed below, the Court will **GRANT** the motion to dismiss and **DENY** the motions to strike and for sanctions.

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

The Court, however, accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cnty., N. Carolina,* 22 F.4th 412, 416 (4th Cir. 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Further, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). Ultimately, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

The Court will briefly summarize the procedural history of Plaintiff Andrew Dixon's prior lawsuits, which, as explained below, are relevant to the issues now before the Court. In January 2025, Dixon filed a Complaint in Mecklenburg County Superior Court. He alleged that police officers violated his rights under the North Carolina and United States Constitutions, and maliciously prosecuted him following a May 2, 2020, incident in which his then-girlfriend reported

that he had assaulted her and possessed a firearm at an address on Panthersville Drive. *See* 3:25-cv-110 Doc. No. 1-1. After Defendants removed the case to federal court and moved to dismiss, Dixon voluntarily dismissed it.

Several months later, in June 2025, Dixon refiled the same Complaint in the same state Superior Court. Defendants again removed the matter and moved to dismiss for lack of service. *See* 3:25-cv-512, Doc. No. 9. Dixon acknowledged that he had not served all defendants and requested additional time to do so. Doc. No. 11. Rather than dismiss the case, the Court granted Dixon an extension of time to complete service. *See* Doc. No. 15. When Dixon failed to provide proof of service within the extension period, Defendants renewed their motion to dismiss. Doc. No. 23. Dixon did not respond, and the Court dismissed the action. Doc. No. 25.

In March 2026, Dixon filed a materially identical Complaint directly in federal court. *See* 3:26-cv-250, Doc. No. 1. Before Defendants responded, however, Dixon again voluntarily dismissed the matter. Doc. No. 6.

In the present litigation, Dixon departs from the May 2, 2020, allegations that formed the basis of his prior lawsuits and instead asserts claims arising from events occurring on or about May 13, 2020. According to the Complaint and Amended Complaint, at some point prior to the May 13, 2020, events, Dixon's girlfriend obtained a Domestic Violence Protective Order ("DVPO") requiring him to stay away from her and/or the home on Panthersville Drive. *See* Doc. Nos. 1, 15. In the Amended Complaint, Dixon alleges that on or about May 13, 2020, the girlfriend contacted police and reported that he was interfering with her control of the Panthersville residence. *See* 3:26-cv-393, Doc. No. 15 ¶¶ 7–8. After a warrant was issued for his arrest for violating the DVPO, Dixon turned himself in. *Id.* ¶¶ 3, 18.

With respect to the claims in this action, Dixon again brings claims under § 1983 and the North Carolina and United States Constitutions. As in his prior lawsuits, Dixon alleges that Defendants, Officers Buffington and Maresco, lacked probable cause to arrest, charge, and prosecute him, and that they failed to conduct an adequate investigation when they relied on the girlfriend's report to obtain an arrest warrant. *Id.* ¶¶ 13–14, 19–20. He further alleges that the charges were ultimately dismissed, but that he suffered harm by having to surrender himself on the arrest warrant. *Id.* ¶¶ 3, 21.

Defendants have moved to dismiss the Complaint, Dixon has filed an opposition, and the matter is now ripe for this Court's ruling.

## III. DISCUSSION

### A. Motions to Strike and for Sanctions

As a threshold matter, the Court will deny Defendants' Motions to Strike (Doc. No. 17) Plaintiff's Amended Complaint and for Sanctions (Doc. No. 19). Under Rule 15(a), a plaintiff may amend their complaint once "as a matter of course" no later than "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15(a)(1)(B). Dixon filed his Amended Complaint well within this timeframe. And, because the salient facts underlying the claims in the Amended Complaint are the same,[1] the Court will exercise its discretion and apply the Motion to Dismiss, to which Dixon has responded, to the later filed and now operative Amended Complaint.[2]

---

[1] Although Dixon has withdrawn his legally frivolous *Bivens* claim, the Amended Complaint asserts no new causes of action, and the originally asserted constitutional claims remain.

[2] *See U.S. ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (applying a motion to dismiss to an amended complaint filed while the motion was pending rather than requiring a new motion to be filed); *Byers v. City of Richmond*, 746 F. Supp. 3d 275, 299 n.14 (E.D. Va. 2024) (explaining that because a previously filed motion to dismiss was "fully responsive" to the Amended Complaint, and did not impact the Complaint's substantive allegations, it would not require new pleadings in response to the Amended Complaint); *Buechler*

Further, although Defendants characterize Dixon's repeated filings as vexatious litigation, for the reasons discussed below, the current matter involves a distinct set of events occurring on a different date than Dixon's previous three lawsuits, and the Court therefore finds insufficient reason to impose sanctions under Rule 11 at this time.

**B. Res Judicata**

In their Motion to Dismiss, Defendants contend that Dixon's claims are barred by res judicata because this action represents his fourth lawsuit arising from the same underlying facts. The Court acknowledges that Dixon's prior filings reflect substantial duplication—often verbatim—across complaints. Even so, the Court concludes that the present action is not precluded.

The Court agrees with Defendants that any claims arising from the events of May 2, 2020, are barred by res judicata. Those allegations have already been the subject of multiple prior suits, each culminating in either a voluntary or involuntary dismissal, the sum of which carries preclusive effect. However, Dixon's Amended Complaint now asserts claims based on events occurring on a different date and involving different officers. Although the May 13, 2020, encounter is factually related to the May 2 incident, and although Dixon again asserts the same constitutional theories he has previously attempted to litigate, the operative pleading rests on a distinct set of events—namely, the conduct of officers on May 13, 2020. Because these allegations concern a separate

---

*v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 415 (D. Md. 2012) (explaining that to deny the motion to dismiss without prejudice to refile would be a "useless exercise and contrary to the notion of judicial economy"); *see also Keith v. U.S. Airways, Inc.*, 994 F. Supp. 692, 693 n.1 (M.D.N.C. 1998) ("The court will not require Defendant to file a new motion to dismiss repeating its arguments simply because Plaintiff has introduced an amended pleading while the motion was pending. Because the defects raised in the original motion remain in the amended complaint, the court may consider the motion as being addressed to the amended pleading.").

transaction and different defendants, they are not barred by res judicata. Accordingly, the Court proceeds to consider Defendants' remaining arguments under Rule 12(b)(6).

**C. Section 1983 Malicious Prosecution and Fourth Amendment Claims**

Dixon first asserts a § 1983 malicious prosecution claim. However, "there is no such thing as a '§ 1983 malicious prosecution' claim." *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000) (citing *Brooks v. City of Winston–Salem,* 85 F.3d 178, 183 (4th Cir. 1996)). Put simply, it is "not an independent cause of action." *Id.* Rather, a malicious prosecution theory under § 1983 is "properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Id. See also Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Because Dixon also alleges violations of the Fourth Amendment, the Court will consider his allegations under that framework. *See* Brooks, 85 F.3d at 181–84 (analyzing a § 1983 malicious prosecution claim as a Fourth Amendment seizure claim where the plaintiff alleged that his arrest was not supported by probable cause).

To state a Fourth Amendment § 1983 claim for malicious prosecution, "a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43, and n.2 (2022)). In addition, although a plaintiff need not demonstrate an "affirmative indication of innocence," he must show that the criminal proceedings terminated "without a conviction." *Thompson,* 596 U.S. at 49.

Here, Dixon implicitly acknowledges the existence of a DVPO between himself and his then-girlfriend, Jennifer Fontana, who he alleges contacted police to report that he was interfering with her "control" of the home on Panthersville Drive. Doc. No. 15[3] ¶¶ 3, 7 ("Defendants violated

[3] The Amended Complaint does not have paragraphs numbered 4–6, 9. *See* Doc. No. 15.

the Plaintiff[‘s] … constitutional rights by instituting charges of [DVPO] Violation ….”). He contends that officers improperly arrested, charged, and prosecuted him on these allegations.[4] *Id.* ¶ 15. Although Dixon asserts that "there was no evidence of Plaintiff's presence [at the home when police arrived] or involvement of the alleged crime," *Id.* ¶ 20, Ms. Fontana's testimony to police provided sufficient probable cause to investigate and arrest Dixon for violation of the DVPO.[5]

The Fourt Circuit has long held that a judicial determination of probable cause supporting an arrest warrant "does not involve any adversarial rights, and can be based entirely on hearsay …." *Darling v. Falls*, 236 F. Supp. 3d 914, 924 (M.D.N.C. 2017) (quoting *King v. Jones*, 824 F.2d 324, 326–27 (4th Cir. 1987)) (internal quotations omitted). Probable cause requires only "enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). Moreover, probable cause does not "demand any showing that such a belief be correct or more likely true than false." *United States v. Jones*, 31 F.3d 1304, 1313 (4th Cir. 1994) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Courts assess probable cause based on the totality of circumstances known to the officer at the time. *Id.* And where, as here, an arrest is made pursuant to a warrant, "[p]robable cause for [the] arrest is presumed valid unless plaintiff presents

[4] Police officers do not charge or prosecute defendants, however. *See Greene v. Putnam Cnty. Comm'n, No.* CV 3:21-0520, 2022 WL 16857014, at *7 (S.D.W. Va. Nov. 10, 2022) ("A law enforcement officer is authorized, and indeed compelled, to draft criminal complaints and conduct arrests (or decline to arrest) as necessary."). "Prosecutors alone are responsible for determining the charges they will bring [and prosecute] against any defendant." *United States v. Kidwell*, No. 5:19-CR-00025-002, 2023 WL 5751476, at *5 (W.D. Va. Sept. 6, 2023).

[5] North Carolina law makes it a class A1 misdemeanor to knowingly violate a valid DVPO, and officers *must* arrest when they have probable cause to believe a respondent has violated an exclusion from residence provision or where a party subject to the DVPO is required to refrain from (a) "[t]hreatening, abusing, or following the other party"; (b) "[h]arassing the other party, including by telephone, visiting the home or workplace, or other means"; or (c) "[o]therwise interfering with the other party" and fails to comply. N.C. Gen. Stat. §§ 50B-4.1(a)–(b); 50B-3(9)(a)–(c).

'allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.'" *Caraway v. City of Pineville*, 639 F. Supp. 3d 560, 588 (W.D.N.C. 2022), *aff'd,* 111 F.4th 369 (4th Cir. 2024) (quoting *Beeson v. Palombo*, 220 N.C. App. 274, 727 S.E.2d 343, 348 (2012)).

On Dixon's own allegations, a warrant was issued for his arrest after his girlfriend contacted police to claim that he was interfering with her possession of their home while subject to a DVPO. The fact that Dixon was not present when officers arrived does not negate probable cause. Beyond that, Dixon has not plausibly alleged any facts to suggest that the warrant was improperly obtained or otherwise defective. The Court therefore concludes that although the charges against Dixon were ultimately dismissed, officers had probable cause to arrest him and investigate Ms. Fontana's allegations. Accordingly, Dixon's Fourth Amendment malicious prosecution claim must be dismissed.

For the same reason, the Court will dismiss Dixon's Fourteenth Amendment Due Process claim, which it construes as a repackaged Fourth Amendment malicious prosecution theory of liability. *See Richards v. City of Virginia Beach*, No. 2:09CV75, 2009 WL 10731078, at *3 (E.D. Va. June 15, 2009) (citing *Albright v. Oliver*, 510 U.S. 266 (1994) and explaining that an arrest without probable cause does not violate substantive due process and must instead be analyzed under the Fourth Amendment); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181–82 (4th Cir. 1996) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994) and holding that allegations of arrest without probable cause are most analogous to the common law tort of malicious prosecution).

**D. North Carolina Constitutional Claim**

Finally, Dixon asserts a violation of Article I, Section 19 of the North Carolina Constitution. This claim is premised on the same theory underlying his federal claims—namely,

that officers lacked probable cause to arrest him based solely on his girlfriend's report. But as noted above, Dixon's own allegations establish that a judicial officer issued a warrant for his arrest. Probable cause is presumed when a valid warrant is issued, and Dixon pleads no facts suggesting that the warrant was defective. Because the challenged arrest was supported by lawful probable cause, and Dixon offers no plausible allegations to rebut it, he fails to state a constitutional violation under Article I, Section 19, and this claim must also be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion to Dismiss (Doc. No. 10) is **GRANTED**;
2. Defendants' Motion to Strike the Amended Complaint (Doc. No. 17) is **DENIED**;
3. Defendants' Motion for Sanctions (Doc. No. 19) is **DENIED**; and
4. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 30, 2026

Kenneth D. Bell
United States District Judge